GREENE vs. TIMS, use, &c.

1. The sureties in a bond for the forthcoming of a slave seized by virtue of an attachment, and which slave is afterwards levied upon under an execution issued on the judgment rendered in the same suit, and claimed by a third person, are competent witnesses for the plaintiff in the trial of the right of property.

2. The promise of a plaintiff in attachment to waive his lien on the property attached in favor of certain persons cannot, on the trial of the right to the property, be taken advantage of by one who has no connection with the parties to the arrangement, and whose interest cannot have been prejudiced thereby.

3. The sheriff levied an attachment on a slave, and, taking merely a delivery bond for its forthcoming to answer and satisfy the judgment, restored the slave to the possession of the defendant, and made return on the writ, that a claim had been interposed and bond executed for the trial of the right of property : The plaintiff in attachment thereupon proceeded to prosecute the claim suit, which, before its final disposition, was continued six times by general order of the court and five times by consent of the parties : During its pendency, the plaintiff aided the claimant in procuring security on a claim bond, given by him for other slaves levied upon under an execution in favor of another creditor of the defendant in attachment, and induced certain persons to become his sureties by promising to release his lien on the slave attached :— *Held*—1st. That, however strongly the facts may tend to show an intent to hinder or delay other execution creditors of the defendant in attachment, it cannot be assumed as a conclusion of law that the lien of the attachment was lost. 2d. That if such conclusion could be indulged, an after claimant of the slave, who neither shows himself to have been an execution creditor, nor to have derived title under one, cannot be benefitted thereby.

4. Every legal intendment is made in favor of the affirmance of judgments, and where a charge of the court as applicable to the facts of the case may or may not be correct, it is incumbent on the party complaining to set out in the record so much of the evidence as is necessary to show its error.

5. The expression of an opinion by the court, during the progress of a cause, which does not appear to have been given as a charge to the jury, or intended for their hearing, although erroneous, cannot constitute a ground of reversal.

Error to the Circuit Court of Marengo. Tried before the Hon. Samuel Chapman.

This was a trial of the right of property in a slave by the name of Captain, levied on under an execution in favor of the defendant in error for the use of Goodwin & Walthall against Thomas Batte, sr., and claimed by the plaintiff in error. The following facts are to be gleaned from the record: On the 2d February 1841, the defendant in error sued out an attachment against Thomas Batte, sr., which was levied on the slave in controversy, and a forthcoming bond executed by Thomas Batte, jr., with James Sheppard and William P. Lancaster as securities, whereupon the sheriff restored the slave to the defendant in the attachment. At the time of the levy, Thomas Batte jr. made affidavit that the slave was his property, but he does not appear to have executed a claim-bond—the only bond given by him being the forthcoming bond above mentioned, and upon the execution of which the sheriff endorsed the attachment with his levy and the interposition of a claim by Thomas Batte jr. The claim suit between the defendant in error and Thomas Batte jr. was regularly continued till the fall term 1846, when a trial of the right of property was had, and the slave found subject to the attachment. During the pendency of this suit, judgment was rendered on the attachment against Thomas Batte sr., and an execution, issued on this judgment, was levied on the said slave Captain on the same day and immediately after his condemnation, whereupon a claim was interposed to him by the plaintiff in error. On the trial of this claim, the plaintiff in execution introduced the said Sheppard and Lancaster as witnesses. The claimant objected to their competency, on the ground of their liability on the forthcoming bond, but the court overruled the objection and permitted them to testify. Pending the trial, the claimant's counsel insisted that the lien of the plaintiff in execution was lost in consequence of no claim-bond having been given by Thomas Batte jr., the return of the property to the possession of Thomas Batte, sr., and the continuance of the claim of Thomas Batte jr. from 1841 to 1846, without execution being issued on the judgment; but the court ruled that the lien was not lost, and that the judgment of condemnation was conclusive against all persons who claimed under Thomas Batte sr. or by purchase by virtue of any execution against him. The claimant proved by Lancaster and one Burwell, that Goodwin,

one of the beneficial plaintiffs in this case, induced them to sign a claim-bond for other slaves, which had been levied on under an execution in favor of one Fareinholdt against Thomas Batte sr., and were claimed by Thomas Batte jr., and told them that if they would do so, he would release his claim on the slave Captain.

The court charged the jury that if they believed from the evidence that the boy Captain was the same boy that had been attached and condemned in the trial in which Thomas Batte jr. was claimant, then they should find for the plaintiff in execution.

To the rulings of the court, and to the charge given, the claimant excepted, and now assigns them as error.

Brooks & Byrd, for plaintiff in error:

1. Sheppard and Lancaster were clearly incompetent; they were directly interested in the suit; they were sureties in a bond given by them and young Batte, conditioned to return said slave to answer the judgment which might be recovered in the attachment suit. If said slave was condemned in this suit, he would be subjected to the payment of said judgment, the conditions of the bond would thereby be fulfilled, and the obligors exonerated. Whether the bond was a replevy bond or bond for the trial of the right of property, they were the sureties therein, and if there was no forfeiture, they by their testimony were preventing the said bonds from being forfeited. The replevy bond bears the same date of the sheriff's return.

2. The lien of the attachment was waived, as is shown by the testimony of Lancaster and Burwell.

3. Upon the levy of the attachment a bond was given, not by the defendant in the attachment, but by Thomas Batte jr., a stranger to it; and upon the execution thereof, the slave was returned to the possession of the defendant. This bond was unauthorised by the statute, and could not operate to continue the lien. Clay's Dig. 61, § 33; Rives & Owen v. Willborn, 6 Ala. 45.

4. Judgment in the attachment suit was rendered in 1843, and nothing intervened to prevent the plaintiff from selling the slave under execution, and yet three years elapsed without any proceeding. The lien was thereby lost. Patton v. Hayter, Johnson & Co., 15 Ala. 18.

5. The charge of the court was erroneous. By it the jury were directed to find in favor of the plaintiff in execution, if they should believe that the boy Captain was the same boy that had been attached and condemned in the trial of the right of property between the said plaintiff and the younger Batte. No other question was submitted to their determination. The boy might have been the same, and yet not liable to the execution. The court refused to allow the jury to decide the various questions growing out of the facts of the case.

VARY, for defendant.

CHILTON, J.—1. We cannot conceive what interest the witnesses, Lancaster and Sheppard, had in this controversy. They had, it is true, entered into an informal delivery bond payable to the sheriff, conditioned to have the slave forthcoming to answer and satisfy the judgment of the plaintiff in attachment; but allowing that the bond was good as a common law obligation, it is very certain that the condition was fully complied with, when the property was forthcoming to to be levied upon by the execution, issued on the judgment. The execution has been levied, and the sureties put in no default, so that they must be considered as completely discharged from all liability under it, if any ever attached. They were therefore clearly competent witnesses, and this assignment of error cannot prevail.

2. As to the supposed waiver of the lien upon the slave in controversy, as shown by the proof of Lancaster and Burwell, we think the court very correctly instructed the jury that the claimant could not avail himself of it. He was a stranger to the agreement—was not induced to act upon it so as injuriously to affect his interest, and as he was in no way connected with it, or affected by it, he should not take advantage of it. It was an arrangement between Burwell and Lancaster and Goodwin to induce the two former to go on a claim-bond for the younger Batte, and if *they* do not insist upon the agreement, it is clear that Greene, the claimant, cannot.

3. But it is said that the plaintiff in the attachment lost his lien by the manner in which he has prosecuted his claim upon the property; 1st—Because he proceeded when no claim-bond

was given; 2d—That the slave was permitted to go back into the possession of the defendant in the attachment; 3d—That the case was retained many years on the docket, having been continued six times by the general order of court, and five times by the *consent of the parties;* 4th—That Goodwin was aiding in the meantime the younger Batte, who was then claiming this slave as exempt from the attachment, in obtaining security upon a claim-bond, so as to prevent other creditors of the elder Batte from selling his slaves, and promising even to release his lien on the slave so as to procure sureties for him. It cannot be assumed as a conclusion of law from any or all of these facts, that the lien was lost. They would, however, have been proper for the consideration of the jury, in determining the question (had the claimant shown his right to raise it, of which we will hereafter speak,) whether the plaintiff in the attachment was prosecuting his claim to a condemnation of the slave to the satisfaction of his demand in *good faith,* or, on the other hand, whether the levy and subsequent proceedings were not designed as a mere blind to keep off other creditors from proceeding against the property, for as fraud vitiates the most solemn judgments of courts of justice, it is very clear that if such litigation was conceived and carried on for the covinous purpose last above referred to, the proceedings under the attachment and judgment of condemnation could not be successfully urged against a bona fide creditor, who, in the meantime, had levied upon and sold the slave, nor against a purchaser who could claim the protection of such judgment and sale. It was the duty of the sheriff to have taken a claim-bond before parting with the possession of the property. His *return* upon the attachment, on which the plaintiff had the right to rely, asserts that he did take such a bond, and the claim was thereupon prosecuted, as we have before stated. Now the plaintiff in the attachment, if there was no fraud or collusion between him and the claimant, should not be stripped of his lien by the unauthorised act of the sheriff, to which he never consented, so far as the proof discloses.—4 Ala. Rep. 357; 14 ib. 232.—In Patton v. Hayter, Johnson & Co., 15 Ala. Rep. 18, the plaintiff actively interfered and ordered the delay, and thus lost his lien. But if we concede that the plaintiff in the attachment,

HARVARD LAW SCHOOL LIBRARY.

by reason of the manner in which the claim was interposed and prosecuted, and the return of the property to the defendant in the attachment, lost the lien as against other *bona fide* creditors of the elder Batte, who had caused their executions to be levied, how is the plaintiff in error to be benefitted by the concession? His counsel inform us that he bought the slave under a sale made upon a *fi. fa.* issued on a judgment against Batte sr. in favor of Fareinholdt, and that the slave was levied upon and sold while in possession of the Elder Batte, and pending the trial of the right of property between Tims, use, &c., against Batte jr. However correct all this may be, the record, by which alone we must be governed, says nothing about the manner in which Greene purchased or claimed title to the slave, or of any levy upon him by any creditor, save the defendant in error.

4. The charge of the court to the jury was, "that if they believed from the evidence that the boy Captain was the same boy that had been attached and condemned in the trial in which Thomas Batte jr. was claimant, then they should find for the plaintiff in execution." Now had the claimant shown that he was a *bona fide* purchaser under a sale made by execution upon the judgment of another creditor, as his counsel insist, then we are clearly of the opinion that this charge, which in effect forestalled the inquiries of the jury as to the *bona fides* of the proceeding, which resulted in a condemnation of the property, and consequent preservation of the lien, would have been erroneous. The claimant then should have shown his right to have contested with the defendant in error the effect of the judicial proceedings upon which the plaintiff in execution relied, and in respect to which the court gave the charge complained of. It is manifest, the charge may or may not have been correct, as the facts may have justified or forbade it; and in such case, it is incumbent on the party who complains of the charge to show that as applicable to the case made by the facts, he has been illegally and injuriously affected by it. Taking the proof, which is set out in the bill of exceptions, as being all that was offered, and the charge is certainly correct; for the proof leaves the claimant without shadow of title, and does not even show that he had possession of the slave. On the other hand, the plaintiff shows the levy of the

attachment upon him in the possession and as the property of the elder Batte, his condemnation on the trial of the right of property to satisfy the attachment, and a subsequent levy of the execution issued upon the judgment obtained on the attachment. The doctrine of legal intendments and presumptions forbids us to presume that there was other evidence which would have rendered the charge erroneous—the maxim being *omnia præsumuntur rite et solemniter esse acta.* In Peden v. Moore, 1 S. & P. 71, cited by the plaintiff's counsel, the court charged the jury, "that unless a total failure of consideration was proved they should find for the plaintiff," thus asserting the erroneous legal proposition that the defendant could not avail himself of a partial failure of consideration. The Supreme Court refused to consider the charge as abstract, but reversed the cause upon the presumption that there was evidence as a predicate for the charge. The same may be said of the decision in Rowland v. Ladiga, 9 Porter, 488. In that case the Circuit Court in its charge embodied the facts upon which it was predicated, and on which the erroneous charge was founded. In Dukes v. Lowrie, 13 Ala. Rep. 459, the charge as an abstract proposition of law, was incorrect, and we presumed it was not abstract. In the case before us it is very different. Here, the charge, as we have before stated, must be refered to the evidence to determine whether it is legal or otherwise, and thus considered, it is free from objection.

5. Pending the examination of the witnesses, the bill of exceptions recites that the counsel insisted the defendant in error had lost his lien, for the reasons above refered to, and the court ruled that the judgment of condemnation was conclusive as against a purchaser from the elder Batte, or under execution against him pending the trial, &c. This was the mere expression of an opinion by the court in the progress of the cause—was not given as a charge to the jury, nor does it appear that the opinion was intended for their hearing. We cannot look to it as a ground for reversal, but must regard it as a mere expression of an abstract opinion in response to the suggestion of counsel. Had the opinion thus expressed been given in charge to the jury, it would, for the reasons we have previously stated, have constituted a ground for reversal.

We are unable to discover any error in the record, and the judgment of the Circuit Court must be affirmed.

DARGAN, J.—I dissent from the conclusion attained by the court. The charge given by the Circuit Court, I think, is erroneous. It reduced the inquiry of the jury to the simple question whether the boy Captain was the same that had been attached and condemned in the trial of the claim of Thomas Batte, jr. Thus a conclusive effect was given to those proceedings against the claimant, although he was not a party to them, nor bound by them in any manner, so far as the record in this cause discloses. For this error, I think the judgment should be reversed.