## COOK & SCOTT *vs.* PARHAM.

24   21
,101  570
24   21
135  185

1. In an action against the owners of a steamboat to recover damages for the loss of a slave, who was hired as a deck hand on the boat, and was killed in consequence of a collision with another boat occasioned by the negligence and want of skill of the former's officers, one of the part-owners acting as captain at the time of the collision, evidence of his general reputation as a steamboat captain is admissible, as tending to prove notice of his incompetency to the defendants.

2. In such an action, a witness for plaintiff was asked " what was the general reputation of said defendant as a steamboat captain," and answered that he had no reputation, for the reason that he had no experience, and that he regarded him as wholly incompetent for such a duty :" *Held*, that the question and answer were admissible.

3. When evidence is offered and admitted for a purpose for which it is inadmissible, its admission is not an error which will reverse, if the record also shows that it was admissible for another purpose; if the opposite party wishes to limit its effect, he must do so by requesting instructions to the jury.

4. A person acquainted with the navigation of the river, and a witness of the collision, may give his opinion as an expert whether the particular act which occasioned it was an act of prudence and discretion on the part of the officers.

5. The owners of the boat would be responsible for the loss of the slave, if his death was the legitimate and natural consequence of the collision, and the collision was caused by the negligence of the defendants; and if his death was occasioned by his own act in leaping into the river, when frightened out of his ordinary presence of mind by the excitement, confusion and danger caused by the collision, it would be the legitimate consequence of that collision.

6. It is the duty of the owners to use due care in providing competent officers for the boat, and the bailor may hold them responsible for the neglect of this duty, although he had the means of knowing the officers' characters for care and skill when he hired his slave to them.

7. Where two persons are employed in the same general business by a common employer, if one is injured by the negligence of the other, the employer is not responsible ( *per tot. cur.;*) but whether this rule applies to owners of a steamboat, when sued for the loss of a slave who was hired as a deck hand on the boat, and whose death was caused by a collision occasioned by the carelessness of the captain, who was one of the owners, *quære?* (Chief Justice CHILTON and Justice LIGON holding the negative, and Justices GOLDTHWAITE and PHELAN the affirmative.)

8. If the collision was caused by the negligence or fault of the pilot, and the owners had the means of knowing that he was careless and reckless, they are responsible for the injury.

ERROR to the Circuit Court of Mobile.

Tried before the Hon. LYMAN GIBBONS.

PARHAM brought an action on the case against the plaintiffs in error, as co-partners and owners of the steamboat Wm. R. King, for the value of a slave named June, who was hired as a deck hand on the boat, and who, it was alleged, came to his death by the negligence of the defendants. It appears from the record, that on the night of the 5th Feb., 1847, a collision took place between the Wm. R. King and another steamboat, called Winona, a short distance below Beckley's Landing on the Tombeckbee River, by which the former was so much damaged that, after some ineffectual efforts to stop the leak, she was run up to the said landing, and there run ashore, where she sank by the stern, her bows resting on the bank; about fifteen minutes elapsed between the collision and her sinking. Soon after the collision, the slave June, with some other hands, was ordered aft to launch the yawl, which was aft on the lower deck; one of these hands was afterwards found drowned in the yawl, and June was also found drowned a little below the stern of the boat. There was evidence conducing to show, that after the bows of the boat had reached the bank, and when there was full opportunity for all persons on the boat in front of the wheel-house, having ordinary prudence or presence of mind, to reach the shore, June unnecessarily jumped overboard into the river, from a part of the boat in front of the wheel-house, and was drowned; that much excitement, confusion and alarm prevailed on board of the boat after the collision, and that the slave who jumped overboard, supposed to be June, seemed to be " confused and frightened" at the time.

Major Cook, who was one of the owners of the boat, was acting as captain at the time of the collision, and was on the hurricane deck in command of the boat when it took place. There was evidence tending to show that he was incompetent for that station, by reason of his want of skill and experience, and that the collision took place in consequence of his want of skill; and that the pilot of the boat was also an incompetent man for his station, by reason of his reckless character. There was, however, conflicting evidence on all these points.— The evidence also showed that, on our river steamboats, the

pilot is subject to the orders of the captain, and steers by his directions; and that slaves hire for greater wages as deck hands on steamboats, than elsewhere, in consequence of the nature of the service. To show that the collision took place in consequence of the negligence of the officers of the Wm. R. King, the plaintiff introduced a witness (Mr. Charles) who was well acquainted with the customs and usages of the river, from a service of nine years on steamboats, and who was the clerk of the Winona at the time of the collision, and saw what occurred. Plaintiff asked this witness, " Was the act of the King, in turning across the river when and where she did, that of prudence and discretion?" The defendants objected to this question, but their objection was overruled. The witness answered : " The act of the King, in turning across at that time and place, was not one of prudence, but of gross carelessness and mismanagement." Defendants also objected to this answer, but their objection was overruled, and they excepted.

Plaintiff also asked one of his witnesses, " What is the general reputation of said Cook as a steamboat captain;" to which question, before the taking of the deposition, the defendants objected. The witness answered, " Cook had no reputation, for the reason that he had no experience, and he regarded him as wholly incompetent for such a duty." The court allowed the answer to be read in evidence.

The court charged the jury as follows :

That before they could find for the plaintiff, they must be satisfied from the evidence that the collision was occasioned by the carelessness or want of skill of the officers of the King, and that the death of the negro was the legitimate and natural consequence of the collision, as contra-distinguished from the inevitable consequence thereof; that even if the negro had an opportunity of escaping, by the use of ordinary care and presence of mind, yet, if he lost his presence of mind from fright, and so jumped overboard, and this fright and loss of presence of mind were occasioned by the carelessness or negligence of the officers of the boat, the defendants would still be liable to plaintiff for his death.

That, as a general principle, it was true that where two persons are employed by a common employer about the same general business, and one of them is injured by the negligence of the other,

the common employer is not responsible for that injury; yet this principle was not applicable to the present case, for two reasons: 1st, if the injury arose from the carelessness or incompetency of Cook as captain, since he was also one of the owners, he and his co-owners were responsible; 2d, if the collision occurred from the negligence of the pilot, then the further question arises, Did the owners exercise due and proper care and diligence in the employment of him as pilot? and if they did exercise such proper care and diligence in employing him, then they are not liable; but if, on the other hand, they employed him as a pilot, knowing him to be careless and reckless, or having the means of knowing that such was his character, then they are liable.

That in hiring hands to work on a steamboat, there was an implied contract, on the part of the owners, that they will use proper care and diligence that the captain, pilot and other officers employed in navigating the boat, shall be competent to discharge their respective duties.

The defendants excepted to these several charges, and requested the court to instruct the jury as follows:

1. That, if the said slave and the pilot were both hired by the defendants, and employed on the same boat, and if the loss of the slave occurred from the negligence or misconduct of the said pilot in navigating the boat, defendants are not liable in this action.

2. That, if they found that the plaintiff, at the time of hiring, knew, or had the means of knowing, who was the captain and who the pilot of said boat, and their skill and capacity, and that the loss occurred from the want of skill or capacity of the captain or pilot, then plaintiff cannot recover.

The court refused these charges, and the defendants excepted.

The several rulings of the court on the evidence, the charges given, and the refusal to charge as requested, are now assigned for error.

WM. G. JONES, for plaintiffs in error:

"If a servant, by his negligence while actually employed in his master's business, does any damage to a stranger, the master shall answer for his neglect."—1 Bl. Com. 431. This principle has been established for centuries, and the books are full of cases showing its application. No case, however, can be

found in England prior to the year 1837, in which it was even attempted to make the master responsible to one of his servants for an injury resulting from the negligence or unskillfulness of a fellow servant employed by the same master in the same general business.   The entire absence of any such case, for so long a time, during which such injuries must frequently have happened, is persuasive, almost conclusive evidence, that the master is not responsible to his servant in such cases.   The first attempt to establish such a liability, was in the case of Priestly v. Fowler, 3 M. & W. 1, decided in the Court of Exchequer in 1837. It was admitted by the eminent counsel who argued that case, and the more eminent judge who decided it, that it was without precedent.   Not a single authority was cited, either in the argument or judgment.   It was argued and decided entirely on principle.   The decision was, that the master is not responsible to his servant for an injury done him by the negligence or unskillfulness of a fellow servant employed in the same general business.   This decision has been since followed and confirmed in England, by the case of Winterbottom v. Wright, 10 M &. W. 109, and the recent cases of Hutchinson v. The York, Newcastle & Berwick Railway Co., and Wigmore v. Jay, reported in the Monthly Law Reporter for December, 1850, p. 379-94.   In 1838, the case of Murray v. The South Carolina Railroad Company, 1 McMul. 385, was argued in the Supreme Court of South Carolina.   It was admitted to be without precedent, (the counsel and court probably not being aware of the decision made in England the preceding year,) and was argued and decided on principle.   The court in South Carolina came to the same conclusion, and on the same principles, as the Court of Exchequer in England.   The next case arose in Massachusetts in 1842.—Farwell v. The Boston & Worcester R. Road Co., 4 Metc. 49.   It was elaborately argued and considered, and the same decision made as in the two preceding cases.   To the same effect, in the same State, is the late case of Hays v. The Western R. Road Co., 3 Cushing 270.   The same doctrine is held in New York, in the case of Brown v. Maxwell, 6 Hill 592; and in Pennsylvania, in Strange v. McCormick, Law Reporter for April, 1851, p. 619.   The principle on which all the cases rest, is also settled in North Carolina, in the well reasoned case of Heathcock v. Pennington, 11 Ired. 640; and also in

3

Alabama, in Williamson & Hitchcock v. Taylor, 4 Port. 234. To this strong array of high authority, the only case that I find opposed, is the Georgia case of Scudder v. Woodbridge, 1 Kelly 195 Even that case admits the principle, but holds, on some fancied grounds of policy or humanity, that it does not apply to the case of slaves. It is submitted that such a distinction is untenable on any principle of law, policy or humanity. According to that case, if a free white man and a slave are both hired as deck hands on the same steamboat, and they are both equally injured by an explosion occasioned by the carelessness or unskillfulness of the engineer, the white man would have no redress against the owner of the boat, but the owner of the slave would have such redress. Such a doctrine is absurd, and directly contrary to the decision of this court in 4 Por. 234. Nor is there any principle of policy or humanity that requires this distinction, but obviously the reverse. Certainly humanity would require of the owner of a slave, before hiring him out in as hazardous a business as that of a deck hand on a steamboat, to inquire and satisfy himself of the proper construction of the boat and its machinery, and the carefulness and skill of its officers, and make it also his pecuniary interest to inquire into this, by throwing on him the hazard of loss. On the other hand, if the loss is thrown on the steamboat owner, the slave owner need make no such inquiries. He need only satisfy himself of the solvency of the steamboat owner. It is easy to see by which principle the life and safety of the slave would be best protected.

Neither is there any good ground for the supposed distinction, by which the immunity of the master is supposed to depend on the fact of his having employed skillful and careful servants. This, it is true, is hinted at in some of the cases cited, but it has never been decided in any. It is scarcely a *dictum*. It has no foundation in principle, but it is wholly inconsistent with the principle on which the cases are decided. With respect to strangers, the liability of the employer does not at all depend on the general skill or want of skill of the servant. It depends on the unskillful or negligent conduct of the servant in the particular act which occasioned the injury. If a railroad company were to employ the most careless and ignorant man on earth as engineer, and an accident were to happen by which a passenger was injured, if it were shown that the engineer acted on that

particular occasion with due care and skill, the company would not be responsible. On the other hand, no matter how skillful and prudent the engineer may be, yet, if the injury were occasioned by his unskillfulness or negligence on that particular occasion, the company would be liable. The liability, then, does not depend at all upon the general skill or prudence of the servant, or his general want of skill or prudence. It would seem, then, that there is no foundation for the distinction attempted to be made.

This is an action on the case, for an alleged breach of duty. It is not an action on a contract, express or implied. In all the cases above cited, the courts recognize the settled distinction between actions on the case for a *tort,* and an action of assumpsit on a contract. They say that as to strangers, as to the public at large, there is a duty imposed on stage owners, steamboat owners, railroad companies, and others engaged in similar business, for a breach of which they are responsible to a stranger who is injured thereby ; but as to their servants and employers, there is no such duty. As between the employer and employee, it is altogether a matter of contract. In all these hazardous employments, the hazard is as well known to the employee as the employer. The servant charges and receives higher wages in consequence of the greater risk, and there is no implied contract of indemnity against such risks. Having been paid the price he stipulated for to incur the risk, when loss occurs, it would be most iniquitous, not only to allow him to throw off the loss from his own shoulders, but to cast it upon one who has paid him to bear it. This just and equitable doctrine is fully recognized and asserted in the cases before cited.—See, especially, 4 Por. 239-40 ; 2 Met. 440 ; 4 *ib.* 57; 2 Story's R. 176 ; 1 McMullan 401-2; the opinion of Baron Alderson, L. Reporter for Dec., 1850, p. 391-2 ; the close of the opinion in L. Reporter for April, 1851, p. 623 ; 4 Metc. 56 and 60; 11 Ired. 643-4. If the principles contended for be correct, the court below erred in its charges and refusal to charge on these points.

The court also erred in charging, generally, that, if the loss was occasioned by the negligence of the servants of the defendants, the defendants were liable. The law is well settled, that in such cases the defendants are only liable for gross negligence, not for ordinary negligence. Precisely such a charge was held errone-

ous by this court in the case before cited from 4 Porter, and the judgment was reversed on that ground.—See cases before cited.

The court also erred in not giving the charge requested as to Parham's knowledge of the officers of the boat, and their character and qualifications, before he hired the negro to the defendants. If he had such knowledge, he certainly ought to be bound by it. This is also shown by the case in 4 Porter.

The court also erred in admitting the testimony objected to as the opinions of the witnesses as to Cook's character; also in allowing a witness to give his opinion as to the imprudence of crossing the river at a particular time and place. He should have stated the facts, and not his opinion. In Johnson v. The State, 17 Ala. 623, this court decided (Parsons, J., delivering the opinion) that a witness could not testify that on a particular occasion a man "looked serious." It was considered that this was not a fact, but an opinion, and therefore improper to be given in evidence. It is respectfully submitted that this is a strong case against receiving opinions in evidence, and as to what is opinion, as contra-distinguished from fact.

Certainly, the admission of the part of Charles's testimony which was objected to, was inadmissible.—Sills v. Brown, 9 C. & P. (38 Eng. Com. L. R. 247); Malton v. Nesbit, 1 C. & P. 70, (11 E. C. L. 318); Jemison v. Drinkald, 12 Moore, (22 E. C. L. R. 442).

There was strong evidence conducing to show, that, after the collision, and before the sinking of the boat, the boat was run to the shore, and every person had an opportunity to go ashore without risk; that the negro might have done so, by the use of ordinary prudence, but he unnecessarily and imprudently jumped overboard, in a state of alarm, and thus by his own wrongful act contributed to, and in fact caused, his own death. It has been seen from the case in 4 Porter, that the master can have no redress, unless the slave, had he been a free man, could have maintained an action. It is well settled, that "a plaintiff suing for negligence, must himself be without fault."—Brown v. Maxwell, 6 Hill 593; Rathbun v. Payne, 19 Wend. 400. "If the plaintiff's negligence concurred in any way in producing the injury, the defendant is entitled to a verdict."—Pluckwell v. Wilson, 5 Car. & P. 375, (24 E. C. L. R. 368.) See, also, on this point, Williams v. Holland, 6 Car. & P. 24, (25 E. C.

L. R. 261); Hartfield v. Roper, 21 Wend. 615; 6 Cowen 189; 12 Pick. 177; 11 East 60. This doctrine seems especially applicable to cases of collision. The case in which the doctrine is most clearly considered and stated, is the case of Jones v. Boyce, 1 Starkie's R. 493, (2 E. C. L. R. 482.) In that case the defendant was proprietor of a stage coach, in which the plaintiff was a passenger riding on the top. The stage, by the breaking of some of the harness which were defective, was placed in imminent danger of being upset, and the plaintiff jumped from the coach and broke his leg. Lord Ellenborough said, the plaintiff might recover, " if he was placed by the misconduct of the defendant in such a situation as obliged him to adopt the alternative of a dangerous leap, or to remain at certain peril," &c. " On the other hand, if the plaintiff's act resulted from a rash apprehension of danger, which did not exist, and the injury which he sustained is to be attributed to rashness and imprudence, he is not entitled to recover." In the case under consideration, all danger to the slave from the collision had entirely ceased; the boat had been run to the shore; passengers had passed from the boat to the shore, and back from the shore to the boat. Then the slave rashly, unnecessarily and imprudently jumped overboard, and drowned himself. Under such circumstances, the court should have given the charge asked on this point, and erred in refusing it.

Jno. A. Campbell, *contra:*

The rule of law found in the oldest books is, " that acts done by a servant, within the line of his employment, are esteemed to be the acts of the master; that it is through favor and indulgence a person is authorized to employ the agency of another, and consequently it is reasonable that he should be responsible for the conduct of his substitute within the line of his employment."—5 B. & C. 547 (12 E. C. L. R. 311.) The attempt to engraft an exception on this general rule was first made in England some years ago, and was, to a certain extent, successful. This was in relation to the master's liability to a servant for the conduct of his fellow-servant. The rule to be gleaned from the cases in England and this country, upon this subject, is, " that where a master uses due diligence in the selection of competent and trusty servants, and furnishes them with suita-

ble means to perform the service in which he employs them, he is not answerable to one of them for an injury received by him in consequence of the carelessness of another, while both are engaged in the same service."

In this case, the owner of the boat was himself the captain; his duty was to direct the navigation; he was engaged in the performance of his duties when the collision took place; the servant was under his immediate command and direction, and no evidence was offered tending to the conclusion, or even raising the suspicion, that the pilot acted without or against orders. The question involved is, whether an employer is responsible to his employee, for injuries occasioned by his want of skill or mismanagement, or by the want of skill and mismanagement of those acting immediately under his directions and in his presence.

In the case of Randleson v. Murray, 8 Ad. & E. 109, the owner of a ware-house was held liable to a carter in in his employment, for injuries received from the unskillful and negligent conduct of a porter engaged in his employment about the same ware-house. The case of Denison v. Seymour, 9 Wend. 9, places the liability of Cook beyond all question. The head-note is: " The master of a steamboat employed in the transportation of passengers, like the master of a vessel engaged in the merchant service, is answerable for the diligence of all to whom is entrusted the management of the vessel;" and he was held liable for the acts of his pilot, though he was not on duty himself. The Supreme Court of the United States, in the important case of The New Jersey Steam Navigation Co. v. Merchants' Bank of Boston, 6 Howard 344, 383, 393, intimate a doubt whether a party could contract for exemption from liability for negligence, unskillfulness or misconduct. A person assuming a charge requiring skill of which he is destitute, if a loss arises in consequence of his want of skill, is guilty of gross neglect; the want of skill is imputable as such.—2 Hawks 145; Story on Bailments §§ 175, 176, 179, 431.

The master of the vessel is the substitute for the owners, in all that concerns the navigation of the boat; his powers extend to the punishment of the crew, and to the use of whatever is necessary for the government of the vessel; and where the persons employed on the boat are slaves, this dominion is increased by their peculiar character, and the nature of their relations. This

Cook & Scott v. Parham.

dominion is given, because of the vast responsibility that attaches to his office. Life and property are both dependent upon his sagacity, fidelity and skill. To the parties who are subject to this dominion he is personally responsible for its exercise. The owners, who delegate to him this authority, are also responsible, because he is of their selection, is engaged to do their work, and they receive the profits.

The claim of Cook, in this case, calls for the establishment of the rule, that there is no responsibility between the owners and masters of the boat and the men on board. Suppose a slave were recommended as fit for the employment, and by his unfitness the boat suffered an injury. Would not his master be responsible? Is not every hired servant (free person) responsible for his negligence and misconduct to his employer? It is objected that the words of the charge are improper. We say, that, if Cook wished the degrees of the carelessness and negligence defined, by the court below, he should have requested the definition; the court was not required voluntarily to define them. The owner of the boat being the master, and the acts of carelessness or mismanagement which produced the collision being his, he is responsible for them. The words "carelessness and want of skill" cannot be made more expressive by the use of the qualifying word "gross." "Carelessness" is a superlative, and is equivalent to extreme neglect.

The charge of the court upon the conduct of the slave, in leaping into the river, is sustained by the decision of the U. S. Supreme Court in the case of Stokes v. Saltonstall, 13 Peters 181, upon which it was founded. The evidence shows that there was excitement, alarm, peril, confusion on board. Whose conduct ocsasioned all these? The law is stated with great precision by the Chief Justice, in the charge given to the jury as reported in 13 Peters, *supra*. To excuse the party who produced the peril, there must have been rashness, recklessness, fright produced by an adequate cause. The case of Vandenburgh v. Truax, 4 Denio 464, is an authority on this point; also Guille v. Swan, 19 Johns. 381. Even in those cases where the person who suffers the injury is in fault, damages are sometimes recoverable.—19 Conn. 507; 22 Verm. 213. The doctrine contended for by plaintiffs in error, that, if the plaintiff's negligence concurred in any way in producing the injury,

the defendants are entitled to a verdict, does not apply here. That principle applies to a case where both parties were in fault in creating the cause of danger : as where the injury was produced by collisions, in which the party injured was out of place, or driving furiously, or failed to keep a proper watch, or to maintain signals, and thus contributed to mislead the other, who inflicted the injury. This doctrine is qualified, as will be seen in the cases commented on in 19 Conn., *supra*. See also 22 Verm. 213 ; 41 E. C. L. R. 422. The case cited from 1 Stark. 493 does not sustain the exception. The charge in the case of Stokes v. Saltonstall, *supra*, was framed upon that case, and its meaning was fully examined in the discussion.

The remaining question is upon the evidence of character and skill, and the opinions of the witnesses upon the negligence. The opinions of witnesses were taken in 10 Howard 570. They are always taken in courts of admiralty.—Conk. Adm. 307, 308, 309. The authorities show that they are admissible in courts of law.—18 Ohio 375 ; 12 Illinois 369 ; 6 Ala. 212 ; 11 Ala. 732. The opinion of Charles was framed upon a full knowledge of the facts : he was present, and was acquainted with the rules of navigation. The case of Malton v. Nesbit, 1 C. & P. 70, sustains the admissibility of his evidence. The case of Jameson v. Drinkald, 12 Moore 148, also sustains the decision of the court below. The decision in Sills v. Brown, 9 Car. & P. 601, steers clear of this case. There, a nautical witness was asked, whether he thought, having heard the evidence in the cause, the conduct of the captain was right ; our question was, whether a change of direction, at a particular time and place, and under given circumstances, was skillful and prudent.

The evidence offered to show the unskillfulness of Cook was admissible. The witness said, he had no reputation because he had no experience, and gave his own opinion from knowledge ; and the court admitted the fact, and the opinion on which it was founded. The decision of the court is supported by 1 McLean's R. 543 ; 3 Dana 383 ; 17 Vermont 499.

The last question is, whether the plaintiff below could recover, if he might have found out the qualifications of the captain and pilot. I have attempted to show that there was a contract for ordinary skill, prudence and judgment on the part of Cook, and that he could not relieve himself from this obligation. The fact

that he was inexperienced only imposed a greater obligation for vigilance and care ; he should have secured faithful officers and a capable crew. Parham was not required to look to this ; he was authorized to repose upon the integrity of Cook, and Cook cannot controvert this right.

GOLDTHWAITE, J.—It appears from the record, that, in order to show the want of skill on the part of Cook as a steamboat captain, the deposition of a witness who had acted as such for many years, and was acquainted with Cook, was offered by the plaintiff below. In taking such deposition on interrogatories, the plaintiff had asked this question : " What is the general reputation of said Cook as a steamboat captain ?" To this interrogatory the defendants objected, before the taking of the deposition, and at the trial also. The court decided, that evidence of such general reputation could not be given ; but the witness, in answering such interrogatory, having stated that " Cook had no reputation, for the reason that he had no experience, and he regarded him as wholly incompetent for such a duty," the court overruled the objection, and allowed the answer to be read as evidence to the jury.

Our first impression, on the examination of this case, was, that the question was illegal, and that the answer, although it may have contained some evidence applicable to the issue, should have fallen with the question, for the reason that such portion, not being responsive to any interrogatory, was but the statement of the witness on oath. A more careful investigation has, however, satisfied us that the question itself was legal under the circumstances disclosed by the record. The action was against two parties, one of whom was sought to be charged as the actual wrong-doer, as well as part owner, and the other (Scott) simply as his co-owner. The principle established in the case of Walker v. Bolling, 22 Ala. 294, is, that the owner of a steamboat was bound to the exercise of ordinary care in providing competent officers; and unquestionably, under this decision, in an action to charge the owner, evidence showing that he had notice of the incompetency of a particular officer, by whose neglect the injury was occasioned, would be legal testimony. The general reputation of Cook for want of skill as a steamboat captain, if not evidence of the fact itself, at least tended to prove notice to the

owner, if the fact was otherwise established, (Branch Bank v. Parker, 5 Ala. 731;) and as such was admissible evidence. So also the answer, or at least that portion of it which said that " Cook had no reputation for the reason that he had no experience." The statement of an additional fact as the basis of the general character, is not, in our opinion, objectionable ; and if it were so, a specific objection should have been made to that portion of the answer, as the court was not bound to separate the legal from the illegal. That this evidence was offered for the purpose of proving the unskillfulness of Cook, does not affect its competency, if the record shows that it was admissible for any other purpose, (Lawson & Swinney v. The State, 20 Ala. 55 ;) and in such case, if the party wishes to restrain or limit its effect, it must be done by requesting instructions to the jury with a view to that result.—Greene v. Tims, 16 Ala. 541.

Neither can the objection raised to the evidence of the witness Charles be sustained. He was the clerk of the Winona, had been in the business for many years, and, as we understand his testimony, was possessed of that degree of information as to the navigation of the river which would entitle him to speak as an expert, and as such to give his opinion as to the skill or want of skill manifested by a particular act on the part of the officers of the boat. A nautical person may give his opinion as to whether, upon the facts proved by the plaintiff, the collision of two ships could have been avoided by proper care on the part of the officers of one of them.—Fenwick v. Bell, 1 Car. & Kin. 312 ; Malton v. Nesbit, 1 Car. & Payne 70.

It appears from the record, that there was evidence conducing to show that the slave June leaped from the boat, into the river, when there was no necessity for him to have done so ; and upon the trial it was insisted, that if his death was caused by his own rashness, and not by the act of the plaintiffs in error, they could not be held responsible. The charge given upon this point was, " that, if the death of the slave was the legitimate and natural consequence of the collision, though not the inevitable consequence, the defendants would be liable;" and the judge a'so added, " that if a man of ordinary care and presence of mind could have saved himself, yet, if the slave was frightened out of his ordinary presence of mind, by the confusion and alarm occasioned by the collision of the boats, and that collision was

the result of the negligent acts of the defendants, then they woul l be liable"; or, in other words, that the death in such a case would be the legitimate consequence of such negligence. In this charge there was no error.

We concede that, where the party who is injured by the negligent acts of another, has contributed by his own misconduct to produce the injury, he will not be heard to complain, and cannot recover.—Jones v. Boyce, 1 Stark. R. 493. But this principle has no application to the present case. That the death of the slave may have been the result of fright, or the want of presence of mind, occasioned by circumstances of excitement, confusion and danger brought about by the negligent acts of the defendants, should not be imputed to him as a fault; nor could we regard it in any sense as misconduct, if, under like circumstances, one should mistake the best means of safety, and lose his life in the effort to preserve it. The principles involved in this branch of the case, were fully and ably considered in Stokes v. Saltonstall, 13 Pet. 181, and the opinion of the court in that case sustains that portion of the charge to which we have referred.

Neither was there any error in the refusal of the court to instruct the jury " that, if the plaintiff knew or had the means of knowing the captain and the pilot of the boat, and their character for skill and care," this would relieve the defendants from liability for their negligence.

One of the legal propositions asserted by the charge as requested, is, that it devolves upon the bailor to ascertain the competency of the officers of the boat if he can do so; and this proposition cannot be sustained. We have decided, that it was the duty of the owners of the boat, to use due care in procuring competent servants or officers in the management of their business, and that the bailor has the right to hold them responsible for a failure to discharge that duty.—Walker v. Bolling, 22 Ala. 294. The officers of a steamboat are removable at the pleasure of the owners; and a just sense of what is due to the public demands their removal, whenever it is ascertained that, from want of skill or care, they are improper persons to discharge the responsible duties confided to them. The bailor can make no calculation upon the continuance of any particular captain or pilot, and ought not to be held to any inquiry as to a duty which the law properly devolves upon the owners, and which

the bailor has the right to believe they have discharged.—Hutchinson v. The York Railway Co., 5 W., H. & G. 341.

To the charge of the court, that where two persons are employed by a common employer in the same general business, and one of them is injured by the negligence of the other, the employer is not responsible therefor, as a general proposition we all yield our assent to. It is too well established, both upon English and American authority, to be now controverted.—Priestly v. Fowler, 3 M. & W. 592; Hutchinson v. The Railway Co., 5 W., H. & G. 341; Wigmore v. Jay, *ib.* 354; Murray v. S. C. Railroad Co., 1 McMullan 385; Farewell v. The Boston & Worcester Railroad, 4 Met. 49; Strange v. McCormick, Penn. Rep.; Brown v. Maxwell, 6 Hill 592; Coon v. The Utica Railroad, 6 Barb. 231; Hayes v. The Western Railroad, 3 Cush. 270. In relation to the charge that this rule did not apply in case the injury arose from the carelessness of Cook as captain, and that in such case both he and his co-owners would be responsible, the court is divided; the Chief Justice and Judge Ligon holding it to be free from error, while Judge Phelan and myself hold it to be erroneous. As the expression of our individual views on the question upon which we differ can determine no principle, we decline submitting them until the same question is presented before a full court.

The other portion of the charge, that if the collision occurred from the negligence or fault of the pilot, the owners were responsible, if they knew or had the means of knowing that he was careless and reckless, falls directly within the principle of Walker v. Bolling, *supra*, and in that there is no error.

It follows from what we have said, that there was no error in the refusal of the court to give the first charge requested, as, taken in connection with the evidence, it asserted the legal proposition, that although the pilot of the boat was reckless and careless, the owners were absolved from all responsibility, if the party injured and such pilot were servants in the common business. The last charge requested we have already considered.

The consequence of our disagreement upon the point referred to, is the affirmance of the judgment upon division.

GIBBONS, J., not sitting.