10L 351
1pi 400

THE NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY v. JOHN L. FOSTER, Adm'r of Chas. G. Turner, dec'd.

1. PLEADING AND PRACTICE. *Amended declaration. Relation thereof.* The personal representative of a deceased brought suit against railroad company for killing his intestate, who was a brakesman on train. Suit was commenced 15th of April, 1876. At September term, 1877, there was a trial and verdict for plaintiff. New trial was granted, it having been developed, on trial, that the killing took place in Alabama. An amended declaration was then filed averring the *venue* in Alabama, and setting out the Alabama statute. Defendant pleaded to the amended declaration not guilty and the statute of limitations of one year. *Held*, that the amendment neither changed the cause of action nor the parties to the suit nor deprive the defendant of any defense which he had to original suit, and that the amendment related to the issuance of original summons, which was issued within one year after killing. The fact that the amended declaration had an additional averment that the death of intestate was caused " by the employment by the defendant, without proper care, of unskillful agents," does not change the cause of action. It was only a statement of an additional means by which the same wrongful act was accomplished.

2. FELLOW-SERVANTS. *Negligence.* Under the laws of Alabama, the car inspector, the brake repairer, and the brakesman are fellow-servants, and no right of action can accrue to either for an injury sustained by the negligence of any of the others.

Railroad v. Foster.

3. JURY AND NON-JURY DOCKET. *Pleadings.* Upon a trial by a jury, without objection, upon pleadings which did not demand a jury, a new trial was granted, and an amended declaration was filed and no jury was demanded. The fact that defendant did not object to trial by jury on 'the first trial, would not estop him to object on second trial, the declaration being amended and additional issues presented. It was error to submit the cause to a trial by jury over the objection of defendant. It should have been placed on the non-jury docket.

4. NEW TRIAL. *Excessive damages.* Upon motion for a new trial, the court stated the verdict was excessive, but if plaintiff would agree to a less, designated sum, he would not grant a new trial. Plaintiff agreed to do so provided the defendant would not appeal, and pay the amount promptly. The defendant declining the court permitted the verdict to stand. This was error. It was an attempt to compel defendant to compromise. A new trial should have been granted.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. N. BAXTER, J.

EAST & FOGG for Railroad Company.

W. G. BRIEN and M. M. BRIEN, Jr., for Foster.

COOKE, Sp. J., delivered the opinion of the court.

This was an action instituted by the administrator of Charles G. Turner, dec'd, against the plaintiff in error, in the law court of Davidson county, seeking to recover damages for the alleged wrongful killing of the plaintiff's intestate, who was at the time of his death employed in the capacity of brakesman upon a freight train of the defendant company. There was a verdict and judgment for the plaintiff below, and a new trial having been refused, the defendant appealed to this court.

A great many errors have been assigned in argument and urged why the case should be reversed and a new trial granted, which will be noticed in the, order in which they arise in the case, so far as may be deemed necessary. The original writ was issued on the 15th of April, 1876. The declaration, filed at the May term, 1876, averred that the defendant was a common carrier by railroad from Nashville, Tenn., to Chattanooga, Tenn., and that the plaintiff's intestate, while in the employ of the defendant as a brakesman upon one of its trains, without any fault or negligence on his part, was killed on the 6th of April, 1876, by the use of unsafe and unsuitable machinery, which was, or ought to have been known to the defendant to be defective, to-wit, a defective and insufficient brake.

The suit was for the use and benefit of the widow and child of the deceased. There was a plea of not guilty, and at the September term, 1877, 'the cause was submitted to a jury and resulted in a verdict for the plaintiff, which was set aside by the court and a new trial granted, it having developed on the trial that the plaintiff's intestate was killed in the State of Alabama, near Bridgeport—a portion of defendant's road including that place—being in that State. On the 3d day of November, 1877, leave was granted the defendant to file an amended declaration, which was done. By the amended declaration it was averred that plaintiff's intestate was an employee of the defendant, to-wit, a brakesman, and while in the necessary discharge of his duty he, without fault or blame on his part,

23—VOL. 10.

by the use of unsafe, unsuitable and dangerous ma-
chinery, known to the defendant, or which ought to
have been known to it, to-wit a brake, was thrown
from the train in running upon defendant's road in
the State of Alabama, and killed, with a further aver-
ment that under the statute laws of Alabama a right
of action accrued to him, and sets out in *haec verba*
a portion of the act of the Legislature of that State
passed February 5, 1872, section 2641 of the Code of
Alabama, under which he avers a right of action ac-
crued to him.

He also in the same count avers further, that de-
fendant did not use ordinary care and prudence to
prevent the loss of his intestate's life; but on the con-
trary, by associating him with unskilful employees or
with unsafe and dangerous machinery, the said in-
testate, Turner, on the day and year aforesaid, in the
State of Alabama, was killed. To this amended dec-
laration defendant pleaded first, not guilty; second,
the statute of limitations of one year; and third, that
there was no such statute of the State of Alabama
as that averred in the amended declaration, and upon
which issues were taken, by a similiter to the first
and by replications traversing the allegations of the
second and third pleas.

At the January term, 1878, the cause was again
tried by a jury and a verdict rendered for the plain-
tiff for ten thousand dollars. The testimony showed
that the deceased was killed on the 6th day of April,
1876. The court was requested to instruct the jury
that if the deceased was killed more than one year

before the time of filing the amended declaration the bar of the statute was complete, and they should find a verdict for the defendant. This, his Honor declined to do, but instructed them that as the amendment to the declaration neither changed the cause of action nor the parties to the suit, the amendment related to the issuance of the original summons, and unless twelve months had elapsed after the deceased was killed before the issuance of the writ, the action was not barred. This instruction is very earnestly insisted upon as being erroneous. We do not think so. The general rule seems to be, that amendments which do not change the parties to the action, introduce a new cause of action, or deprive the opposite party of some defense, relate to the issuance of the summons. In the case of *Nance* v. *Thompson,* 1 Sneed, 321, it was held that an amendment introducing new counts in a declaration in ejectment, laying *demises* in the name of different persons from those contained in the original declaration, the purpose and effect of which was to avoid both the champerty act of 1821, and the statute of limitations, was not to introduce either a new right of action or new parties, in the sense of the rule which forbids such amendment, and that it related back to the institution of the suit; and this, although it was clear, no recovery could have been had upon the original declaration. The authority of this case has not been questioned.

In the case of *Crofford.* v. *Cothran & Neal,* 2 Sneed, 492, it was held, the same judge, McKinney, delivering the opinion, that where the time of the commence-

ment of the action was important in reference to the statute of limitations, or other matter of defense, the effect of an amendment *changing the form of the action* must be restricted to the time of the amendment. As the law then was, the statute of limitations applied to the *form* and not to the *right* of action, as is now the case under the provisions of our Code. Hence, the amendment in that case was, in effect, a new action. In the case of *Flatly, adm'r.* v. *The Memphis & Charleston Railroad Company,* 9 Heis., 230, it was held that the doctrine of relation could not be applied so as to affect the rights of others or defeat the defense of the statute of limitations when complete. That was a case where the action was originally brought by a party who had no right to maintain it, and no right of recovery against the defendant, and under the liberal provisions of our statute of jeofails a wholly different party, who had a right of action was, by an amendment, substituted as plaintiff, and in that case it was properly held that the amendment did not relate back to the original writ, and the statute of limitations continued to run up to the time when the amendment was made. Neither of these cases are in conflict with the principle laid down in the case of *Nance* v. *Thompson,* above cited. Nor are they applicable to the case now under consideration.

In this cause the action was instituted by the proper party and for the use of the proper persons. The gravamen of the suit was the wrongful killing by the defendant of the plaintiff's intestate. The

Railroad *v.* Foster.

amendment made no new parties, introduced no new cause of action nor deprived the defendant of any defense, as the plea of not guilty, which was the only defense to the original declaration and was applicable alike to the amended declaration which alleged the same cause of action, but which was defectively stated in the original.    The effect of the amended amendment was simply to lay the venue in the State of Alabama and aver the statute of that State, as the law by which the right was to be governed.    It was also alleged in the amended declaration that the death of the intestate was caused by the defective machinery, *or by the employment by the defendant without proper care, of unskilful agents.*    And it is insisted that this additional averment constitutes a different cause of action, but this evidently was only a statement of an additional means by which the same wrongful act, the killing of the deceased, was accomplished. There was no error, therefore, in the charge of the court upon this question.

The court was also requested by the defendant to instruct the jury that under the statute of Alabama, set out in the plaintiff's declaration, no action would accrue to the plaintiff for the acts of omission or commission of any of the agents or employees of the defendant.    The act set forth in the declaration is entitled an act to prevent homicides and is as follows: " When the death of a person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action against the latter at any time within two years thereafter, if

the former could have maintained an action against the latter for the same act or omission, had it failed to produce death, and may recover such sum as the jury deem just, and the amount so recovered shall be distributed as personal property of an intestate is now distributed, and shall not be subject to the payment of the debts of the deceased; and such right of action shall survive against the personal representative of the person unlawfully causing the death aforesaid": Code of Ala., sec. 2641.

This section, it is insisted, applies only to the natural persons, and not to corporations or artificial persons, because the next section but one of the same act provides that: "If such death is caused by the wrongful act, or omission or. culpable negligence of any officer or any agent of any chartered company, or private association of persons, such company or association is responsible for damages and an action may be maintained against it as provided in the preceding section": Code of Ala., sec. 2643.

The argument is that if it had been the legislative intention to embrace corporations in the act set out in the declaration (sec. 2641), the same provision would not have been substantially repeated immediately after in section 2643. This might be tenable were it not for the express provisions of the Code itself, by the very first section of which it is enacted that the word *person*, whenever used in this Code, includes a corporation as well as a natural person. Hence, the provisions of the two sections above recited only furnish an illustration of the confusion that may be cre-

ated by an attempt to render more explicit that which, in legal contemplation, is already sufficiently so of itself. His Honor correctly held that the action could be maintained under section 2641 set forth in the declaration and rightfully declined to give the insructions as requested.

His Honor, in his charge, after instructing the jury that "the State of Alabama had adopted the general rule as established in all the English and nearly all the American States, that a servant or employee who is injured by the negligence or misconduct of his fellow-servant or employee, can maintain no action against the master or company for such injury;" then proceeds to further instruct them that "the State of Alabama *has not modified* the rule of law above stated, as the State of Tennessee, by its decision of our Supreme Court has in the case of *Carroll*, adm'r. v. *N. & C. R. R. Co.*, wherein they say the rule does not apply in cases where the employee in one department of the work of a railroad is separate, distinct and apart from the work of the other employees by whose act or negligence he is injured, having no necessary connection with each other further than being employed on the same railroad by the same company. So in the State of Alabama the general rule of law prevails." He then further instructs them very correctly as to the risks of the service which an employee assumes. And then adds: "The company is not bound to adopt every new improvement, although it may be safe. It is sufficient that the whole running stock was in a safe condition or good order, or believed to be such,

*upon the inspection of the skillful and proper officer* of the company upon starting out upon the trip. If the proof shows that the company was at fault in this respect, and which negligence of the company caused the death of the deceased, the company would be responsible."

There was proof in the cause tending to show that the train upon which the defendant was a brakesman at the time he was killed, was made up in Nashville and was proceeding to Chattanooga, that the defendant company kept at Nashville employees called car inspectors, whose duty it was to inspect the cars in a train before it started out, and to see that they were in good order and safe condition. There was some testimony tending to show that it was also the duty of the brakesmen to examine the brakes which were to be used by them, before the train was started. The testimony also tended to show that the deceased, who on that trip had exchanged places with another brakesman upon the same train, was thrown from the train by reason of the wheel used to work the brake coming off the top of the brakestaff—the nut which confined it, and which fastened with a screw, having come off. There was no direct evidence as to where or how the nut came off, but the fact of its being off was known to another brakesman in whose hands the wheel had come off while attempting to use it, going down the mountain some thirty or forty miles before the train reached the place where the accident occurred. This brakesman had not communicated the condition of the brake to the deceased, and that in attempting

to use the brake in obedience to the signal of the engineer, the wheel came off in the hands of the deceased, and he was precipitated from the top of the car, run over by the wheels of the train, and killed.

There was no evidence that the train was inspected by the car inspector before starting from Nashville, but there was testimony showing that a brake repairer and the deceased had passed over a portion of the train before it started searching for a "hatchet" with which to repair a brake upon another car, and in doing so had passed by the brake the wheel of which coming off caused the death of the deceased, but made no inspection of it.

The defendant requested the court to charge the jury in reference to the instruction above quoted, that if they found that the brake repairer or car inspector, and the brakesman of freight trains were, from the necessary duties of their positions, thrown together or associated or brought in contact with each other, then they will be deemed, under the decisions of Alabama, co-employees in the same department of service, and the common employer, the defendant, will not be responsible for an injury occurring to either of these employees at the hands of the other. That the machinist who repairs, under the law of Alabama, is the fellow-servant of the brakesman, and the negligence of such a machinist, from which a brakesman suffers injury is no ground for action against the common employer; which the court declined to charge. It is insisted, that in view of the evidence, both the charge as stated above, as well as the refusal to charge in

accordance with the above specific requests, was erroneous. There is no question, but the laws of Alabama at the time the deceased was killed, controlled the rights of the parties in this case, and whether there was error in this part of the charge as given, or the refusal of the specific instructions asked for, depends wholly upon the laws of that State.

It is conceded that the first portion of the charge above set out was correct, but it is insisted that the last portion is in conflict with it and erroneous. The construction given to the laws of that State by our own Supreme Court, is of the highest authority and controlling upon us. The question of the liability of a railroad company for an injury occasioned to one employee by the negligence of another, under the laws of that State came before the Supreme Court of Alabama in the case of *Thomas* v. *The Mobile & Ohio Railroad Company*, 42 Ala. Rep., p. 672. That was a case where a fireman was injured by reason of a defective engine, which defect was known to the machinist of the company, and who had had it in the shop for repairs several times, and had failed to remedy the defect, and permitted it to be used upon the road. In that case Chief Justice Walker, delivering the opinion of the court says: "The question remains whether, if the mechanic charged with repairing the engine was negligent in failing to remedy the defect, the defendant is responsible for the injury alleged to have resulted therefrom to the plaintiff." This question will arise upon another trial, and must be decided.

Is a railroad responsible to one of its servants employed on a locomotive for an injury occasioned by the negligence of others employed in its machine shops? This court has twice decided that 'where two persons are employed by a common employer in the same *general* business, and one of them is injured by the negligence of the other, the employer is not responsible therefor': 24 Ala., 21; 22 Ala., 294. Of this doctrine it is said in the former case that 'it is too well established, both upon English and American authority, to be now controverted.' The English authorities, without exception, support this ruling, and Judge Redfield, in whose mind some difficulty as to its justice and policy was produced by the reasoning of a Scotch judge, withdraws serious objection to it, if taken with the qualification prescribed in *Weggett* v. *Fox*, 36 Eng. Law & Eq., 486; 1 Redfield on Railways, 525, sec. 5, No. 15. That qualification is, that the master is answerable that the servants shall be persons of ordinary skill and care. That qualification has been twice announced in this State. The precise shape of its statement is, that it is the master's duty to use due care in procuring competent servants or officers, and he is responsible for a failure to discharge that duty: *Cook* v. *Parham*, 24 Ala., 21; *Walker* v. *Boling*, 22 Ala., 294. With this qualification the rule above stated, which prevails in England, must be regarded as established in this State." Again he says: "The rule which bases the liability on the superiority of grade of the negligent servant, and the subordination to him of the injured servant is, in our judgment, not founded in

adequate reason. It can make no difference to the brakesman whether he is injured by the carelessness of another brakesman on some remote part of the train, or of the engineer or conductor, nor can it make any difference whether a fireman is injured by the negligence of the engineer who directs him, or *of the machinist who is charged with fitting the engine for the road."* It is not even attempted to be shown by this record that there was any want of care in the employment of its agents by the defendant, or that they did not possess reasonable skill. Under this direct authority we are constrained to hold that under the laws of Alabama the car inspector, the brake repairer and the deceased brakesman, as well as his fellow-brakesman, were fellow-servants, and that no right of action could accrue to either for an injury sustained by the negligence of any of the others. The instruction, therefore, contained in the latter clause of the charge above quoted, that it was sufficient that the whole running stock was in good and safe condition, or believed to be so, upon the inspection of the skillful and proper officers of the company upon starting out upon the trip, and if the proof showed that the company was negligent in this respect, and which negligence of the company caused the death of the deceased, the company would be responsible, was not only in conflict with the former part of the charge above cited, but was erroneous, as was also his refusal to give the specific instructions requested. It is true we have a very different rule well established in this State, and with the correctness of the principle an-

nounced we have nothing to do. It is sufficient that such is the law of the State of Alabama.

Again, there was no demand for a jury to try the cause, either in the original or amended declaration, nor any demand for a jury within the time or in the manner required by law. When the cause was called on the final trial below, the defendant moved the court to order the cause to be transferred to the non-jury docket, to which the plaintiff objected and demanded that it be tried by a jury. His Honor held that inasmuch as the defendant had permitted the cause to be tried by a jury upon the original declaration and issue without objection, he should be held to have consented that it should be again tried by a jury, notwithstanding the amended declaration and additional issues presented under it; and ordered a jury to be impanelled to try the cause over the objection of the defendant. This was erroneous. If the defendant could have been held to have assented to the cause being again tried by a jury by reason of his failure to object to a jury on the first trial, had the cause remained in *statu quo*, no such consent could be presumed when additional averments and other issues were made in the cause. On the other hand, the plaintiff having failed to demand a jury, either by his original or amended declaration, or in any other manner, or to show any excuse for such failure, must be held under the law to have waived his right to have the cause tried by a jury, and it was error in the court to impanel a jury to try the case over the objection of the defendant, as it was then triable by the court.

and should have been transferred to the non-jury docket. It has been holden by this court that where a party had demanded a jury to try a case which came up by appeal, upon the record within the time prescribed by law, and again at a succeeding term made another demand for a jury in the same case, which was refused by the court because made too late, he should be held to have waived his first demand by reason of his failure to bring it to the attention of the court, and it was not error in the court to deny him a trial by jury of the cause: *Coulter* v. *Weed Sewing Machine Co.*, 3 Lea, 115.

Upon considering the motion for a new trial, the court below stated that for certain specified reasons he considered the verdict excessive, but that if the plaintiff would consent to reduce it one-half, or to $5,000, he would not grant a new trial; but if the plaintiff agreed to so reduce the amount of the verdict, the defendant must agree not to appeal, or else the verdict should stand for the whole amount; whereupon the plaintiff offered to reduce the amount of recovery to $5,000, *if the defendant would agree not to appeal and would pay the amount and all costs promptly.* This defendant declined to do. Whereupon the court overruled his motion for a new trial. This proceeding was in effect an attempt to compel the defendant to compromise the suit by paying an amount fixed by the court or else pay the whole amount of a verdict which, as is fairly deducible from the record, he considered excessive to the extent of $5,000. He should have granted a new trial: *Vaulx* v. *Herman*, 8 Lea, 683.

There are some other questions of less importance presented by the record, but as they are most likely to be avoided on another trial, we deem it unnecessary to consider them here.

For the errors above indicated, the cause must be reversed and remanded for another trial.