SOLOMON JACKSON v. GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY CO.

Delivered November 4, 1896.

**1. Railway Company—Liability—Act of Employe not in Line of Duty.**

The action of a locomotive fireman in jumping from a moving engine because of apprehension of danger from derailment, thereby striking against and injuring a third party, is not an act so in the line of his duty and employment that the railway company will on that ground alone be liable for the resultant injury to such other person.

**2. Same—Negligence—Proximate Cause of Injury.**

Where, through the negligence of a railway company in not providing its cars with brakes, the engineer of a train is unable to stop it before reaching a point of danger, after being duly signaled, and the fireman, under a reasonable apprehension of danger to his life, leaps from the engine and strikes against a track repairer standing by, thereby crippling the repairer, the company will be liable for such injury. Associate Justice Neill dissenting.

**3. Proximate Cause—Definition.**

It is not absolutely essential that the proximate cause should be the one nearest in point of time to the injury, since there may be intervening causes that are mere incidents to the original cause, which were put in motion by it, and which are but a continuance of it, and are traceable back to the force that set them in motion. If the injury is produced by the wrongful act during the continuance of its causation, it will be regarded as the proximate cause.

APPEAL from Bexar.    Tried below before Hon. S. G. NEWTON.

*J. M. Watlington* and *J. A. Buckler*, for appellant.—1.    The court erred in not overruling, and sustaining, the general demurrer of defendant to plaintiff's first named original petition, wherein plaintiff claimed damages for personal injuries caused by the negligence of defendant, because said petition alleges a good cause of action against defendant, and the damages so claimed therein constitute proper grounds for an action at law.    Railway v. Bently, 73 Texas, 596, 7; Gonzales v. Galveston, 84 Texas, 8; Railway v. Woodall, 2 Willson's C. C., sec. 475; Eckles v. Dodd, 20 Texas, 191; 2 Thomp. on Neg., 888, 889, 1070; Hardegg v. Willard, Am. Dig., 1895, p. 2926, sec. 101; Wharton on Neg., sec. 160; 52 Am. and Eng. R. R. Cas., 531; 17 S. W. Rep., 946; 111 Mo., 601; 115 Mo., 283; 12 Am. and Eng. R. R. Cas., 176, and note 180; McDonald v. Sorelling, 14 Allen, 290; Bigelow's Lead. Cas. on Torts; Coulter v. Exp. Co., 56 N. Y., 585; Long v. Railway, 99 N. Y., 158; Railway v. Chapman, 31 Am. & Eng. R. R. Cas., 394; Railway v. Salmon, 39 N. J. L., 5, s. c., 39 N. J. L., 299; 16 Am. and Eng. Ency. of Law, 438, 9.

*Bergstrom & Newton*, for appellee.—1.  The plaintiff's petition should set out the facts constituting his cause of action, but when the facts are contradictory and inconsistent with one another so that the court cannot determine from an inspection of the petition upon what state of facts the plaintiff expects to rely for a recovery, then the petition itself is insufficient and subject to general demurrer.  Rev. Stats., art, 1187; Ogilsby v. State, 73 Texas, 658; Rowe v. Horton, 65 Texas, 89; Thomas v. Browder, 33 Texas, 783.

2.  The defendant railway company was in no manner liable for the wanton, careless or negligent act of its employe, done not within the scope of his duty.  Cotton Oil Co. v. Bond, 25 S. W. Rep., 43; Railway v. Armstrong, 23 S. W. Rep., 236; Railway v. Moody, 23 S. W. Rep. 41; Railway v. Reed, 80 Texas, 362.

3.  If, under the circumstances set out in appellant's petition, the servants and agents of the defendant in charge of and operating the train, or the section men, were guilty of negligence, and such negligence placed the fireman McCormick in a position where an ordinarily prudent man might have deemed himself in danger of life or limb by remaining in such position, and said fireman jumped from the train in order to avoid injury from such apparent danger, he may be entitled to recover damages therefor; but if the effort to avoid such injury was one made for the fireman's own protection, and not in the performance of any duty that he owed to his master, and by such act he caused injury to appellant, then appellant cannot recover from the employer of the person causing the injury, because such act was not done in the performance of any duty owing to the master, nor in performing any duty which the master was under obligation to perform to the person injured, and because the original act of negligence was too remote and could not reasonably have been anticipated as the result of such act of negligence.  Railway v. Anderson, 82 Texas, 516; Lumber Co. v. Denham, 85 Texas, 60; Jones v. George, 61 Texas, 352; Roswadofskie v. Railway, 1 Texas Civ. App., 487; 16 Am. & Eng. Ency. of Law, 428-433.

FLY, ASSOCIATE JUSTICE.—Appellant sued appellee to recover five thousand dollars damages for personal injuries sustained by him while in the employ of appellee.  A general demurrer was sustained to the petition, and appellant declining to amend, judgment was rendered for appellee.

The petition stated that on the 8th of June, 1895, appellant was engaged with others in repairing appellee's track in Guadalupe County, and was under the direction and control of foreman John Daly; that while so engaged, a freight train approached, and appellant, to secure his safety, assumed a position about six feet from the track; that one Thornton McCormick, a fireman on the locomotive, about the time the train was passing appellant, recklessly, carelessly, negligently and without any excuse jumped from the engine while it was in rapid motion,

and jumped against appellant, knocking him down and breaking his leg. It was also alleged that McCormick saw appellant, or could have seen him by the exercise of reasonable care, and that the act of McCormick was committed while engaged in the service he was employed by appellee to perform, and appellee was liable for the injury he inflicted.

In the second count of the petition it was alleged that Foreman Daly, knowing that a freight train was soon expected to arrive, sent a flagman to stop it before it reached that part of the track that was being repaired; that the signal was given, but was carelessly disregarded by the engineer, and the train did not stop or lessen its speed until it reached the spot where appellant was standing, but passed him at a high rate of speed; and that "Fireman McCormick had reasonable grounds for believing and did actually believe that said track was not in condition for the train to pass over it, and that it was out of repair, and that some of the rails were out of place and off the track, and actually believed and had reasonable grounds for believing that it would be dangerous for him to remain upon the engine any longer, and that the only way for him to escape the danger he regarded as imminent, was to immediately jump from the train, which he did, just as said train was passing where the plaintiff was standing, and in doing so, jumped upon and against the plaintiff, as stated in the first count of this amended petition, and injured him as therein stated, from which injury he suffered the damages therein stated. That on account of the negligence of the engineer of said train, in his failure to heed the said signal and to stop said train, and on account of the signaling of the same by the said section boss, and the consequent frightening of the said fireman, the plaintiff was injured by the negligence of the defendant, for which he prays judgment. He charges that while he was at work at the time and place aforesaid for the defendant, and under the control of the said Daly, he, said Daly, knowing of the approach of said train, sent forward an employe of the defendant, a flagman, to flag said train and have it stop before it reached the place where said repairs were being made and before it reached the place where plaintiff was standing, and that said flagman did go and flag said train in ample time for it to have stopped before it reached the place where the plaintiff was injured, and the engineer and others in charge of said train did make reasonable effort to stop said train, but were not able to do so on account of there not being sufficient brakes upon it to stop it with reasonable promptness. That it was a large and long train, composed of nineteen freight cars, and was running upon a down grade, and that there were brakes upon only six of the cars, and that this was not sufficient to the proper management and control of such trains going at the rate of speed at which the said train was moving and at which it generally moved. That the reasonable and customary number of brakes for such a train is one to each car, and that they generally are air brakes, and to insure a reasonable degree of safety to the employes of the defendant and others, there should be upon each car an air brake, which was not upon any of

the cars of this train, except six of them.    That on account of the neg-
ligence of the defendant in failing to furnish and provide said train
with the requisite brakes as stated above, the said engineer and the others,
brakemen and others in charge of said train, were unable to stop it or to
lessen its speed until it had come up to where the plaintiff was standing,
and the said fireman, then reasonably apprehending danger to himself
on account of his belief that said track was out of repair, so as not to be
in condition for the passage of said train over it, in order to escape such
supposed danger, jumped from said train against the plaintiff and in-
jured him as aforesaid, and to his damage as aforesaid, for all of which
the defendant is liable to him."

To place the responsibility for the wrongful acts of a servant upon his
master, it must be shown that the wrongful act was so connected with
and incident to the service in which the servant was engaged, that it
can be said to have been done in the line of duty and in the furtherance
of the master's business.    The doctrine of respondeat superior must, in
order to be reasonably sustained, be based on the doctrine that what a
person does through another, he does himself.    To invoke the aid of
this doctrine the act of the servant must have been one that had the au-
thority of the master, express or implied, for its performance.    If the
act is one incident to and within the scope of the servant's employment,
the law will hold the master responsible for the consequences of it; but
it does not follow that every act done by the servant, while performing
the service of his master, is chargeable to the master.    The act must
be within the scope of his employment.    Wood, Mast. & Serv., secs.
277-280.

If, as alleged in the first count of the petition, appellant was injured
through the negligence of the fireman in jumping on him, that negli-
gence cannot be imputed to the master, for there is nothing in the
pleading that indicates that the act of the fireman was within the scope
of his employment.    On the other hand, the petition sets at rest any
surmises on this subject by stating what were the duties of the fireman
on the engine.    By no process of reasoning can the deduction be drawn
that jumping off the locomotive, while it was moving very rapidly, was
incident to the duties of a railway fireman.    There was therefore no
cause of action stated in the first count of the petition.

To fix the liability under the allegations of the second count, they
must be such that, if proven, would show the negligence of appellee as
alleged, and that such negligence was the proximate cause of the injury.
Where the damage directly follows the wrong, and there is no time or
place for the operation of another agency, no difficulty, of course, is ex-
perienced in arriving at a conclusion as to the proximate cause.    But
where there are several causes contributing to the injury, the question
of locating the proximate cause becomes one of much difficulty.

The rule as to proximate cause stated by Addison, and adopted by
Cooley, is as follows:    "If the wrong and the resulting damage are
not known by common experience to be naturally and usually in

sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, the wrong and the damage are not sufficiently subjoined or concatenated as cause and effect to support an action." Addison on Torts, 6; Cooley on Torts, 73, 74.

From this rule it will be seen that it is not absolutely essential that the proximate cause should be the one nearest in point of time to the injury. It is not every intervening cause between the original cause and the injury that will be the proximate cause. There may be intervening causes that are mere incidents to the original cause, which were put in motion by it, and which are but a continuance of it, and which are traceable back to the force that set them in motion. Such intervening causes do not disconnect the primal cause from the disaster, and are not taken into consideration, but disregarded, and the cause that set them in motion is looked to as the proximate cause. "The principle is that, if the injury is produced by the wrongful act during the continuance of its causation, it will be regarded as the proximate cause; but as too remote, though furnishing the occasion, when the injury occurs after the act is completed and terminated, by the intervention of another and independent cause." Railway v. Arnold (Ala.), 2 So. Rep., 337.

Had the fireman been hurled from the locomotive, through the negligence of appellee, and had struck appellant and injured him, no question could arise as to such negligence being the proximate cause of the injury. A case was before the Supreme Court of Alabama in which a cow had been negligently struck by a locomotive and thrown from the track, falling against a lady who was passing along the right of way and injuring her, and the court said: "It is insisted that the act of defendant was only the remote cause of the injury. When the cow was thrown by the engine, it struck the ground, bounced and fell against plaintiff. The bounce and fall was the immediate cause, but it was merely incidental, and was not an independent agency, which had no connection with the act of the defendant. The direct cause was put in operation by the force of the engine, which continued until the injury; and injuries directly produced by instrumentalities thus put in operation and continued, are proximate consequences of the primary act, though they may not have been contemplated or foreseen. The relation of cause and effect between the primary cause and the injury is established by the connection and succession of the intervening circumstances. If the cow was thrown from the track by the negligence of defendant, the injury cannot be regarded as a purely accidental occurrence for which no action lies." Railway v. Chapman, 2 So. Rep., 738.

The circumstances of the case before us are very peculiar, a parallel to which we have not been able to discover. The nearest approach to it of any case that has been brought to the notice of this court is a recent Pennsylvania case. In that case, a street car company occupied a street in Pittsburg with a double track, on one of which the cars passed in one direction, and on the other track in the opposite direction.

Thatcher was in a light wagon on the right hand track, on which the cars moved in the same direction he was going, and seeing a car coming, he moved over to the left hand track.  After the car passed he attempted to get back to the right hand track but was prevented by a wagon that was coming from the opposite direction on the left hand track, and was trying to leave that track for the same reason that Thatcher was,—the rapid approach of the car.  Thatcher turned to the right and the approaching wagon to the left, and the latter being ahead Thatcher could not get off in time and was struck by the car, and the injuries resulted.  It was contended that the driving of the wagon in front of Thatcher was the interposition of an independent responsible cause which produced the result.  It was held by the court that the position was not well taken.  The court said:  "The wagoner was moved by the same impelling motive as the plaintiff.  Both sought escape from the same impending danger.  He neither acted maliciously nor negligently.  Both displayed prudence in acting with the utmost promptness.  If the speed of a car was a dangerous and negligent one, the natural consequence was that, on a much traveled street, those in peril would obstruct each other's movements in attempts to escape."  Thatcher v. Central Traction Co., 30 Atl. Rep., 1048.  So, in the case before us, a danger signal had been disregarded, or the brakes were in such condition that the train could not be stopped; the track was in a dangerous condition; the foreman was giving the danger signal; appellant sought safety for himself by taking a position to one side of the track; the fireman in fear of his life, superinduced by reasonable apprehension, sprang off the locomotive, struck appellant and broke his leg.  If the allegations are true, and they are so taken for the purposes of passing on the demurrer, there was no negligence or malice on the part of the fireman, but he was, in jumping, impelled by the same motive that appellant was in leaving the track, in order to procure his own safety.  The necessity for this step was produced by the negligence of appellee.  His act was not the independent responsible cause of the injury, and could not be said to have disconnected the negligence of appellee from the injury inflicted on appellant.  The negligence of appellee placed the fireman in a position where he was not, and could not, by force of the circumstances surrounding him, act freely and independently, but back of him, impelling him with a force that human nature rarely resists, was the desire for self-preservation.  Appellee had surrounded him with the circumstances that produced the occasion for the exercise of the act to preserve life.

Had the fireman been injured in his attempt to escape danger brought about through the negligence of appellee, he would have been entitled to recover damages, because the necessity for his leaving the engine while under headway, was caused by such negligence.  The question of his contribution to the injury could not arise, because his act was not voluntary.  It would no more be deemed an independent act on his part than if he had been forcibly hurled from the train.  If he

had, however, been by physical force thrown from the train and had come in contact with a human being and injured him, the railroad company would be responsible to both for any resulting damages. Why should not the same principle obtain when the man, through reasonable apprehension produced by the negligence of a railroad company, leaves the train and in his passage comes in contact with and injures another person? It is no more the independent voluntary action of the man in the one instance than in the other. The jumping is a continuation of the casualty put in action by the negligence of the railway company, and there is no intervening act of a responsible independent agency that in any manner impeded the operation of the primal cause. One of the contingencies which appellee was charged with foreseeing was, that under such circumstances its employes would leave the locomotive, and, that section hands would be standing near where they were repairing the track and would be struck and injured by those jumping.

The judgment will be reversed and the cause remanded.

DISSENTING OPINION.

NEILL, Associate Justice.—I fully concur with the opinion of the majority of the court in holding that the first count in appellant's petition does not state a cause of action. But from the opinion holding that the subsequent counts state a cause of action, I am constrained to enter my dissent.

It does not appear from the allegations in the petition that the railroad track at or near the point where the accident occurred was in an unsafe or apparently unsafe condition for the passage of trains. Nor do I think that the inference can be legitimately drawn from the allegations that it was in an unsafe condition. If an inference could be indulged in regard to the condition of the track, I would be more inclined to infer from the petition that the condition of the track was such that the train could safely pass over it; for it was, according to the allegations, running at a speed of twenty-five miles an hour when it reached the point where Mr. McCormick, the fireman, jumped from its engine and injured appellant, and as it does not appear that a wreck or any other accident occurred, I think it may safely be presumed that the train safely passed over the part of the track the section gang, of which appellant was a member, was repairing. Nor is it alleged that the track presented such an appearance to Mr. McCormick as induced him to believe that the engine could not pass over it with safety. The cause of his alarm was a signal to stop the train, and the engineer's failure to obey it. It does not even appear from the allegations that it was a danger signal. It was only a signal "to stop." If it did not signify the stop should be made because it was unsafe for the train to pass over the track, and as there is no allegation that it was the engineer's duty to obey the signal, no negligence can be inferred from the failure of appellee to stop the train, which it seems encountered no danger in pass-

ing over the track, for there can be no negligence without a breach of some duty. Why then should Mr. McCormick have become alarmed, or why should appellee be held responsible for the consequence of his fright when no acts of negligence are averred on the part of its servants which would have reasonably caused it.

But suppose it should be inferred that the signal "to stop" indicated that it was dangerous for the train to pass over the track, but that the engineer, from his experience in running trains, saw and knew from the condition of the track that it was perfectly safe for him to run the train over it. Would there be any negligence in his acting upon his judgment, if in it he was correct? I think not. If, then, it was not negligence in the engineer to disregard the signal to stop, where is the negligence of the appellee which would make it liable for the act of McCormick, occasioned by his fright, unless it was negligence in the section boss to give a signal to stop a freight train when there was no occasion for it?

The giving of the signal by the section boss is not alleged as an act of negligence causing or contributing to the injury, and I need not discuss whether such act, if it had been alleged as negligence causing the injury, would make the appellee liable for its consequences.

If the railroad track was neither unsafe nor apparantly unsafe for the passage of the trains, and it was not the duty of the engineer to obey the signal to stop, the failure of the appellee to furnish the train with a sufficient number of brakes would be a matter of no consequence in this case.

In view of well established principles which I shall quote upon the subject of proximate and remote cause I am firmly of the opinion that no acts or act of negligence are alleged in appellant's petition to which his injury can be attributed as the proximate cause.

"One principle," says the Supreme Court, in discussing the subject of proximate and remote cause, "seems pretty generally conceded, viz: When a defendant has violated a duty imposed upon him by the common law, he should be held liable to every person injured whose injury is the natural and probable consequence of the misconduct; and that the liability extends to such injuries as might reasonably have been anticipated, under ordinary circumstances, as the natural and probable result of the wrongful act." Seale v. Railway, 65 Texas, 275. Unless the act of negligence is a wanton wrong, it must appear that the injury was the natural and probable consequence of the negligent act and that it ought to or might have been reasonably foreseen in the light of the attending circumstances. The Clara, 55 Fed. Rep., 1021. As is said by the Supreme Court of this State in Railway v. Reed, 31 S. W. Rep., 1058, "Where there is no reason to expect it, and no knowledge in the person doing the wrongful act, that such a state of things exists as to render the damage probable, if injury results to a third person, it is generally considered that the wrongful act is not the proximate cause of the injury, so as to render the wrongdoer liable to an action." If a

new cause intervenes, sufficient of itself to cause the misfortune, the former must be considered too remote. But when the intervening cause and its probable or reasonable consequences could reasonably have been anticipated by the original wrongdoer, the causal connection between the wrongful act and the subsequent injury is not broken. Seale v. Railway, supra. The cause of an injury, in contemplation of law, is that which immediately proceeds from it as its natural consequence; and therefore if a party be guilty of a default or act of negligence which would naturally produce an injury to another, but before such injury actually results, a third person does some act which is the immediate cause of the injury, such third person is alone responsible for the injury. Washington v. Railway, 17 W. Va., 190.

Had it been alleged in the petition that the signal given to stop the train was made on account of the track being out of repair and dangerous for the passage of the train, and that the danger was reasonably apparent to McCormick, and the engineer negligently disregarded the signal and was about to run his engine over such dangerous track, and that by reason of such negligence McCormick was induced to believe he was in danger, and to avoid such apparent and apprehended danger, jumped from the engine, and, in doing so, jumped against the appellant and broke his leg—then, possibly (because the question of proximate cause is usually one for the jury), a case might have been stated upon which the evidence should have been heard and the jury required to pass upon the facts. But, in my opinion, if the pleading stated such a case, the jury would have to find, in addition to these facts, that the engineer ought to have reasonably anticipated that the fireman would become alarmed and jump from the engine, and that in jumping he would probably jump against one of the section gang, and inflict upon him some personal injury, before they would be warranted (if at all) in finding a verdict for the plaintiff. Railway v. Reed, supra.

I am not able to see how an unsufficient number of brakes on the train would be a breach of any duty the appellee owed to appellant. Unless it was a breach of some duty to him, it would not, so far as he is concerned, be negligence. The evident purpose of brakes on cars is to aid in stopping, regulating or controlling a train. If one is not on a moving train, or on the track in front of it, it certainly cannot reasonably be anticipated that he would suffer any personal injury by the failure of the railroad company to furnish the train with a sufficient number of brakes to stop, regulate or control its speed. Therefore, I believe, a court would be warranted in holding as a matter of law that an injury to one standing six feet from the track over which a train was running, caused by being jumped upon by a person from the train, is too remote from the fact that the train was not supplied with a sufficient number of brakes, to constitute a cause of action.

I believe that the judgment of the District Court should be affirmed.

*Reversed and remanded.*

The case having been taken to the Supreme Court upon certificate of dissent, the following opinion was rendered by that court:

DENMAN, ASSOCIATE JUSTICE.—In this case in the trial court a general demurrer was sustained to the petition and judgment rendered that plaintiff take nothing. On appeal the Court of Civil Appeals held that the first count in the petition stated no cause of action and upon this question, all the judges having agreed, the correctness of its ruling is not before us.

But a majority of said court was of opinion that the second count of the petition stated a cause of action and that the general demurrer should have been overruled, for which reason it ordered that the judgment of the trial court be set aside and the cause remanded for trial. One of the judges having dissented from such conclusion, on motion of appellee the dissent was certified to this court and we are therefore called upon to determine whether the general demurrer was properly sustained to said count, which is as follows:

"Plaintiff charges that while he was so working on the track of the defendant as aforesaid and while he was under the control of the said Daily as the section "Boss" and while he and the others who were there working with him, in the repair of said track, said freight train was expected to soon pass over the part of the road or track upon which they were making the repairs, and knowing it would soon pass over the same the said Section "Boss" Daily, sent a flagmen in the direction of said expected train with instructions to signal it to stop before it reached the place at which said work was being done, and that said flagman did signal said train in time for it to stop before it reached the place where the plaintiff was standing and where the said repairs were being made upon said track, but through the negligence and gross carelessness of the engineer in charge of the engine upon said train, who refused to obey said signal to stop, or failed to see it through inattention to his duties, said signal was not heeded and said train did not stop or lessen its speed until it had reached the place where the plaintiff was standing, which place it reached at a great rate of speed, to-wit, twenty-five miles an hour, and that as it approached said place the said "Boss" Daily, seeing it was not going to stop, himself again signaled the said train to stop, seeing all of which signals and knowing the track was being repaired at said point, the said Fireman McCormick had reasonable grounds for believing and did actually believe that said track was not in condition for the train to pass over it and that it was out of repair and that some of the rails were out of place and off the track, and actually believed and had reasonable grounds for believing that it would be dangerous for him to remain upon the engine any longer, and that the only way for him to escape the danger he regarded as imminent, was to immediately jump from the train, which he did, just as said train was passing where the plaintiff was standing and in doing so he jumped upon

and against the plaintiff as stated in the first count of this amended petition and injured him as therein stated from which injury he suffered the damages therein stated. That on account of the negligence of the engineer of said train in his failure to heed the said signal and to stop said train, and on account of the signaling of the same by the section boss and the consequent frightening of the said fireman, the plaintiff was injured by the negligence of the defendant for which he prays judgment. He charges that while he was at work at the time and place aforesaid for the defendant, and under the control of the said Daily, he, said Daily, knowing of the approach of said train sent forward an employe of the defendant, a flagman, to flag said train and have it stop before it reached the place where said repairs were being made and before it reached the place where plaintiff was standing, and that said flagman did go and flag said train in ample time for it to have stopped before it reached the place where the plaintiff was injured, and the engineer and others in charge of said train did make reasonable effort to stop said train but were not able to do so on account of there not being sufficient brakes upon it to stop it with reasonable promptness. That it was a large and long train, composed of nineteen freight cars and was running upon a down grade, and that there were brakes upon only six of the cars, and that this was not sufficient to the proper management and control of such trains going at the rate of speed at which the said train was moving and at which it generally moved. That the reasonable and customary number of brakes for such a train is one to each car and that they generally are air brakes, and to insure a reasonable degree of safety to the employes of the defendant and others there should be upon each car an air brake, which was not upon any of the cars of this train, except six of them. That on account of the negligence of the defendant in failing to furnish and provide said train with the requisite number of brakes as stated above, the said engineer and the others, brakemen and others in charge of said train, were unable to stop it or to lessen its speed, until it had come up to where the plaintiff was standing, and the said fireman, then reasonably apprehending danger to himself on account of his belief that said track was out of repair, so as not to be in condition for the passage of said train over it, in order to escape such supposed danger, jumped from said train against the plaintiff and injured him as aforesaid and to his damage as aforesaid, for all of which the defendant is liable to him."

The previous portion of the petition had charged that plaintiff was at the date of the accident in the employ of defendant and as such engaged with other employes in repairing its track, and the petition also contained a proper statement of the amount of damages plaintiff had suffered and a prayer therefor.

We are of opinion, that the general demurrer to the count above quoted was improperly sustained. The facts stated therein, which must be accepted as true on demurrer, show, (1) that plaintiff was rightfully on the ground near the track, and that the fireman was rightfully on the

rapidly approaching engine, each being then in the discharge of his duties as an employe of defendant, which was therefore charged with a knowledge of their whereabouts; (2) that at the time the fireman leaped, the train (whether uncontrolled or uncontrollable, we think immaterial) was under defendant's negligent management dashing at a great rate of speed into a place of such apparent danger that he "actually believed and had reasonable grounds for believing that it would be dangerous for him to remain upon the engine any longer, and that the only way for him to escape the danger he regarded as imminent, was to immediately jump from the train;" (3) that impelled by the instinct of self-preservation, he leaped from the engine, colliding with and injuring plaintiff. In Railway v. Neff, 87 Texas, 309, the following language is quoted from Cook v. Parham, 24 Ala., 21: "That the death of the slave may have been the result of fright, or want of presence of mind, occasioned by circumstances of excitement, confusion and danger brought about by the negligent acts of the defendants, should not be imputed to him as a fault, nor could we regard it in any sense as misconduct if, under like circumstances, one should mistake the best means of safety, and lose his life in the effort to preserve it." And in the course of the opinion, this court, through Justice Brown, say: "The rule is sound and just which holds the party guilty of negligence responsible for the result, if that negligence has caused another to be surrounded by such circumstances as to him appear to threaten the destruction of his life, or serious injury to his person, whether that person be prudent or imprudent, if, in an effort to save his life, he makes a choice of means from which injury results, and notwithstanding it may turn out that if he had done differently, or had done nothing, he would have escaped injury altogether." In Railway v. Watkins, 88 Texas, 26, we said: "Where one, by his own wrongful act, has so terrorized another that such other is thereby impelled to do an act resulting in his injury, the wrongdoer cannot shield himself from liability by showing that the person so terrorized did not act as a reasonably prudent person would have acted under similar circumstances." The true ground upon which the acts of a person so circumstanced are not imputed to him on the issue of contributory negligence, is that the negligent conduct of the wrongdoer has for the time being acquired such a controlling influence over such person that his acts are attributable thereto, instead of to his own volition. His acts, under the circumstances, are in law regarded as would be the movements of an inanimate object set in motion by such negligence. If the fireman had also been injured in the collision with plaintiff, there could be no doubt that defendant's negligence would have been the proximate cause, under the principles above stated, and such negligence stands in the same relation to the injuries inflicted upon plaintiff.

Delivered February 1, 1897.                    *Certified accordingly.*